UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

MAVE HOTEL INVESTORS LLC, d/b/a
THE MAVE HOTEL,

                          Plaintiff,                    2021 Civ. _____

           - against -

                                                **COMPLAINT**

CERTAIN UNDERWRITERS AT LLOYD'S, LONDON,
and HDI GLOBAL SPECIALTY SE, individually and
severally subscribed to Commercial Property Insurance
Policy No. DCESP01372-02,

                         Defendants.

-----------------------------------------------------------------x

       Plaintiff MAve Hotel Investors LLC, d/b/a The MAve Hotel ("Plaintiff"), by its

attorneys, as and for its complaint against defendants, alleges as follows:

### NATURE OF THE ACTION

       1.   Plaintiff seeks relief as the result of defendants' groundless denial of coverage,

under a property insurance policy, for property damage to a hotel it owns.  Plaintiff is entitled to

coverage under that policy and reimbursement for its consequential damages.

### PARTIES

       2.     At all relevant times, Plaintiff was and is a domestic limited liability company

with its principal office located at 410 Park Avenue, Suite 1610, New York, New York 10022.

       3.     At all relevant times, Plaintiff was and is the owner of The MAve Hotel, a

boutique commercial hotel located at 62-64 Madison Avenue, New York, New York 10016, and

which has 74 guest rooms (collectively, with its fixtures, furniture, furnishings, and artwork, the "Hotel").

4.     At all relevant times, upon information and belief, defendant Certain Underwriters at Lloyd's, London ("Underwriters") were and are syndicates engaged in the business of underwriting, subscribing to and/or issuing policies of insurance through the Lloyd's of London marketplace ("Lloyd's") with their principal place of business located in London, England.

5.     At all relevant times, upon information and belief, defendant HDI Global Specialty SE ("HDI") was and is a corporation organized and existing under the laws of the Federal Republic of Germany and with its principal office located at Podbielskistrasse 396, 30659 Hannover, Germany.

## JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332(a)(2) as the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between a citizen of a State and citizens of foreign states.

7.     This Court has personal jurisdiction over Defendants, as they have consented to jurisdiction in this Court and, upon information and belief, they are doing and transacting business in New York State and in this judicial district.

8.     Venue is proper in this district pursuant to 28 U.S.C. §1391, as a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

## RELEVANT BACKGROUND

9.     Underwriters and HDI (collectively, "Defendants") individually and severally subscribed to Lloyd's Commercial Property Insurance Policy No. DCESP01372-02 (the

"Policy") which was issued to Plaintiff on February 28, 2020 and covered the period January 29,

2020, to January 29, 2021.  Underwriters collectively assumed 77.50% of the risk under the

Policy and HDI assumed the remaining 22.50%.

10.     Upon information and belief, at all relevant times, Vanguard Claims

Administration, Inc. ("Vanguard") was and is the third-party administrator of the Policy and was

and is authorized by Defendants to manage claims for coverage under the Policy.

11.     The Policy contains a "SERVICE OF SUIT CLAUSE (U.S.A.)", pursuant to

which Defendants agreed to submit to a court of competent jurisdiction within the United States

in the event of their failure to pay an amount alleged to be due under the Policy.  Underwriters

agreed that process in any suit outside California could be served upon the law firm of Mendes

& Mount, 750 Seventh Avenue, Suite 24, New York, New York 10019 and HDI agreed that

process in any suit could be served upon the law firm of Drinker, Biddle & Reath LLP, 1177

Avenue of the Americas, 41st Floor, New York, New York 10036 and agreed that these law firms

would enter a general appearance on behalf of Defendants.

12.     At all relevant times, Madison Hospitality Management LLC ("Madison") was

and is the manager of the Hotel.

13.     On or about October 23, 2017, Madison, as agent for Investors, entered into and

signed an agreement entitled "COMMERCIAL HOTEL MOU For Families with Children dated

October 23, 2017" (the "MOU") with Acacia Network Housing, Inc. ("Acacia").  Pursuant to the

MOU, Investors, *inter alia*, provided Acacia with confirmed reservations for all 74 hotel rooms

at the Hotel and Acacia, a contractor for the City of New York, utilized those rooms to provide

supervised temporary housing for homeless families with children.  Acacia's clients continued to

utilize the rooms at the Hotel until they vacated the Hotel on October 30, 2020.

3

14.     After the departure of Acacia and its clients from the Hotel, Plaintiff became aware of substantial, direct physical loss and intentional damage to the guest rooms, hallways and common areas at the Hotel beyond normal wear and tear, including, but not limited to, all of the following: numerous punctures in walls and ceilings; vandalized and defaced furniture; slashed fabric headboard covers; slashed carpeting; and slashed and defaced wall hangings.

15.     The Policy supplies coverage for direct physical loss of or damage to Plaintiff's covered property unless that loss or damage results from or is caused by an excluded cause of loss.  It provides, in relevant part, as follows:

### BUILDING AND PERSONAL PROPERTY COVERAGE FORM

A. Coverage

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

1. Covered Property

Covered Property, as used in this Coverage Part, means the type of property described in this section, A.1, and limited in A.2…
a. Building, meaning the building or structure described in the Declarations, including:

(1) Completed additions;
(2) Fixtures, including outdoor fixtures;
(3) Permanently installed:

(a) Machinery; and
(b) Equipment;

(4) Personal property owned by you that is used to maintain or service the building or structure or its premises, including:

(a) Fire-extinguishing equipment;
(b) Outdoor furniture;
(c) Floor coverings; and

(d) Appliances used for refrigerating, ventilating, cooking, dishwashing or laundering;

(5) If not covered by other insurance:

(a) Additions under construction, alterations and repairs to the building or structure;
(b) Materials, equipment, supplies and temporary structures, on or within 100 feet of the described premises, used for making additions, alterations or repairs to the building or structure.

b. Your Business Personal Property consists of the following property located in or on the building or structure described in the Declarations or in the open (or in a vehicle) within 100 feet of the building or structure or within 100 feet of the premises described in the Declarations, whichever distance is greater:

(1) Furniture and fixtures;
(2) Machinery and equipment;
(3) "Stock";
(4) All other personal property owned by you and used in your business;
(5) Labor, materials or services furnished or arranged by you on personal property of others;
(6) Your use interest as tenant in improvements and betterments. Improvements and betterments are fixtures, alterations, installations or additions: (a) Made a part of the building or structure you occupy but do not own; and (b) You acquired or made at your expense but cannot legally remove;
(7) Leased personal property for which you have a contractual responsibility to insure, unless otherwise provided for under Personal Property Of Others.

c. Personal Property Of Others that is:
(1) In your care, custody or control; and
(2) Located in or on the building or structure described in the Declarations or in the open (or in a vehicle) within 100 feet of the building or structure or within 100 feet of the premises described in the Declarations, whichever distance is greater.

3. Covered Causes Of Loss
See applicable Causes Of Loss form as shown in the Declarations…

## CAUSES OF LOSS – SPECIAL FORM

A. Covered Causes Of Loss

When Special is shown in the Declarations, Covered Causes of Loss means direct physical loss unless the loss is excluded or limited in this policy.

B. Exclusions
…

2. We will not pay for loss or damage caused by or resulting from any of the following:
…

   d.(1) Wear and tear

   (2) Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;
   (3) Smog;
   (4) Settling, cracking, shrinking or expansion;
   (5) Nesting or infestation, or discharge or release of waste products or secretions, by insects, birds, rodents or other animals.
   (6) Mechanical breakdown, including rupture or bursting caused by centrifugal force. But if mechanical breakdown results in elevator collision, we will pay for the loss or damage caused by that elevator collision.
   (7) The following causes of loss to personal property:
      (a) Dampness or dryness of atmosphere;
      (b) Changes in or extremes of temperature; or
      (c) Marring or scratching.

But if an excluded cause of loss that is listed in 2.d.(1) through (7) results in a "specified cause of loss" or building glass breakage, we will pay for the loss or damage caused by that "specified cause of loss" or building glass breakage.

G. Definitions
…

2. "Specified causes of loss" means the following: fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage.

6

16.     On January 6, 2021, Plaintiff submitted a claim to Defendants for coverage under the Policy for the damage to the Hotel caused by Acacia and its clients.

17.     By a letter dated April 22, 2021, which was not received by Plaintiff until July 16, 2021 and, upon information and belief, was not mailed until early July 2021, Vanguard, which was authorized by Defendants "to investigate and adjust" Plaintiff's claim, disclaimed coverage for Plaintiff's claim under the Policy.

18.     Vanguard's cursory letter stated that there no coverage under the Policy for the damage to the "interior building and contents" because "[o]ur investigation determined that…[this] damage was caused by normally expected wear and tear over a 3-year period and not from the reported vandalism" and "[t]he policy excludes damage caused wear and tear [sic]". This letter did not define "wear and tear" and did not define "normally expected wear and tear", a phrase which does not appear in the Policy.

## FIRST CAUSE OF ACTION
### (Declaratory Judgment)

19.     Plaintiff repeats the allegations of paragraphs 1 through 18.

20.     Under the Policy, Plaintiff is entitled to coverage for direct physical loss of or damage to Covered Property unless that loss or damage results from or is caused by a cause of loss which is excluded or limited by the Policy.

21.     The Hotel and its contents are Covered Property within the meaning of the Policy.

22.     Plaintiff has suffered direct physical loss of and damage to the Hotel and its contents as the result of the conduct of Acacia and its clients and it is entitled to coverage under

the Policy for that loss and damage because that loss and damage did not result from and was not caused by a cause of loss which is excluded or limited by the Policy.

23.     Defendants contend that Plaintiff is not entitled to coverage for its loss and damage because the Policy excludes coverage for loss and damage caused by or resulting from "wear and tear", which is not a defined term in the Policy and that Plaintiff's loss and damage were caused by or resulted from "wear and tear."

24.     Plaintiff's loss and damage were not caused by "wear and tear" – its loss and damage are not attributable to normal use or gradual deterioration.  Instead, its loss and damage were caused by abnormal use and deliberate destruction.

25.     Plaintiff has complied with all applicable provisions of the Policy including the payment of premiums.

26.     An actual case or controversy exists between Plaintiff and Defendants regarding Defendants' obligation to reimburse Plaintiff for its loss and damage attributable to the conduct of Acacia and its clients.

27.     By reason of the foregoing, Plaintiff is entitled to a declaratory judgment that the Policy provides coverage for Plaintiff's loss and damage attributable to the conduct of Acacia and its clients and that Defendants are obligated to indemnify Plaintiff for that loss and damage up to the limits of the Policy and believed to be in excess of $1 million.

### SECOND CAUSE OF ACTION
### (Breach of Contract)

28.     Plaintiff repeats the allegations of paragraphs 1 through 27.

29.     Under the Policy, Defendants agreed to provide coverage for Plaintiff for direct physical loss of or damage to Covered Property unless that loss or damage results from or is

caused by a cause of loss which is excluded or limited by the Policy.

30.     The damage to the Hotel by Acacia and its clients constitutes direct physical loss or damage to Covered Property within the meaning of the Policy and that loss or damage did not result from or was caused by a cause of loss which is excluded or limited by the Policy.

31.     Defendants have breached their obligations under the Policy by failing to indemnify Plaintiff for this direct physical loss or damage to Covered Property.

32.     By reason of the foregoing, Plaintiff is entitled to recovery of damages from Defendants for, *inter alia*, the costs of repairing the loss and damage to the Hotel, in an amount to be determined at trial but believed to be in excess of $1 million.

### THIRD CAUSE OF ACTION
### (Breach of Contract, Recovery of Consequential Damages)

33.     Plaintiff repeats the allegations of paragraphs 1 through 32.

34.     The purpose of the Policy was to ensure that in the event of loss or damage to Covered Property that Plaintiff's business – the operation of the Hotel – would have the financial wherewithal to continue operating.

35.     Defendants, who had provided insurance for Plaintiff for several years, were aware that there was a large mortgage on the Hotel property and that Plaintiff also bore the burden of paying elevated New York City real estate taxes on that property and elevated operating costs.

36.     Defendants were aware that a failure to promptly investigate and pay covered claims under the Policy would imperil Plaintiff's business.

37.     As a result of the extensive damage to the Hotel, Defendants' delay in stating their coverage position and their eventual unwarranted denial of coverage under the Policy, Plaintiff has lacked the funds necessary to perform the needed repairs on the Hotel, has been unable to

reopen the Hotel to paying guests, has not had any revenue from paying guests since October 30, 2020 and has defaulted on its mortgage.

38.     By reason of the foregoing, Plaintiff has been damaged in an amount to be determined at trial but believed to be in excess of $1 million.

## FOURTH CAUSE OF ACTION
### (Declaratory Judgment)

39.     Plaintiff repeats the allegations of paragraphs 1 through 27.

40.     Under the Business Income (and Extra Expense) Coverage Form in the Policy, Plaintiff is entitled to coverage for lost "Business Income" when it has had to suspend its business operations because of loss of or damage to the Hotel unless that loss or damage is caused by or results from a cause of loss which is excluded or limited by the Policy.

41.     Under that coverage form, Defendants undertook to provide the following coverage:

> We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct physical loss of or damage to property at premises which are described in the Declarations and for which a Business Income Limit of lnsurance is shown in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss….

42.     Paragraph (A)(1) of that form defined "Business Income" as follows:

> a. Net lncome (Net Profit or Loss before income taxes) that would have been earned or incurred; and
>
> b. Continuing normal operating expenses incurred, including payroll.

43.     Paragraph F of this form provides these additional definitions:

> 2. "Operations" means:
> a. Your business activities occurring at the described premises; and

b. The tenantability of the described premises, if coverage for Business lncome lncluding "Rental Value" or "Rental Value" applies.

3. "Period of restoration" means the period of time that:

a. Begins:

(1) 72 hours after the time of direct physical loss or damage for Business lncome Coverage; or

(2) Immediately after the time of direct physical loss or damage for Extra Expense Coverage;

caused by or resulting from any Covered Cause of Loss at the described premises; and

b. Ends on the earlier of:

(1) The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

(2) The date when business is resumed at a new permanent location…

6. "Suspension" means:

a. The slowdown or cessation of your business activities; or

b. That a part or all of the described premises is rendered untenantable, if coverage for Business lncome Including "Rental Value" or "Rental Value" applies.

44.     This form supplies coverage for lost "Business Income" attributable to direct physical loss of or damage to the Hotel unless that loss or damage results from or is caused by an excluded cause of loss.  This form uses the same definition of Covered Causes of Loss as the Building and Personal Property Coverage Form.

45.     Plaintiff has lost "Business Income" due to the necessary "suspension" of its "operations" during the "period of restoration" within the meaning of this form.  Plaintiff has

11

suffered direct physical loss of and damage to the Hotel and its contents as the result of the

conduct of Acacia and its clients and, because of that loss and damage, lacks the funds to repair

the Hotel, has not been unable to reopen the Hotel to paying guests, has not had any revenue

from paying guests since October 30, 2020 and has defaulted on its mortgage.  Accordingly,

Plaintiff is therefore entitled to coverage under this form for its lost "Business Income" due to

the necessary "suspension" of its "operations" during the "period of restoration" within the

meaning of this form.

46.     Plaintiff's loss and damage were not caused by and did not result from a cause of

loss which is excluded or limited by the Policy.  Plaintiff's loss and damage were not caused by

"wear and tear" – its loss and damage are not attributable to normal use or gradual deterioration.

Instead, its loss and damage were caused by abnormal use and deliberate destruction.

47.     Plaintiff has complied with all applicable provisions of the Policy including the

payment of premiums.

48.     An actual case or controversy exists between Plaintiff and Defendants regarding

Defendants' obligation to reimburse Plaintiff for its lost Business Income attributable to the loss

and damage caused by Acacia and its clients.

49.     By reason of the foregoing, Plaintiff is entitled to a declaratory judgment that the

Policy provides coverage for Plaintiff's lost Business Income attributable to loss and damage

caused by Acacia and its clients and that Defendants are obligated to indemnify Plaintiff for that

lost Business Income up to the limits of the Policy.

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

1.     On the first cause of action, a declaratory judgment that the Policy provides

coverage for Plaintiff's loss and damage attributable to the conduct of Acacia and its clients and

that Defendants are obligated to indemnify Plaintiff for that loss and damage up to the limits of the Policy but believed to be in excess of $1 million;

       2.      On the second cause of action, damages in an amount to be determined at trial up to the limits of the Policy;

       3.      On the third cause of action, damages in an amount to be determined at trial but believed to be in excess of $1 million;

       4.      On the fourth cause of action, a declaratory judgment that the Policy provides coverage for Plaintiff's lost Business Income attributable to the loss and damage caused by Acacia and its clients and that Defendants are obligated to indemnify Plaintiff for that lost Business Income up to the limits of the Policy; and

       5.      Such other and further relief as to this Court appears just and proper together with the costs and disbursements of this proceeding and pre-judgment and post-judgment interest at the rate of 9% per annum.

Dated: White Plains, New York
       October 26, 2021

LAW OFFICES OF ROBERT M. KAPLAN

By: _____
       Robert M. Kaplan
Attorneys for Plaintiff
4 Westfield Circle
White Plains, New York 10605
(914) 815-1448
rkaplan8182@gmail.com

13